UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ELBA ROJAS and<br>BOSTON MORTGAGE SERVICES, LLC,<br><br>      Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL<br>CORPORATION and CAPITAL ONE<br>BANK, N.A.,<br><br>      Defendants. | No. 1:23-cv-10844-JEK |

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**KOBICK, J.**

Plaintiffs Elba Rojas and Boston Mortgage Services, LLC ("BMS") bring this action alleging that defendants Capital One Financial Corporation and Capital One Bank, N.A. withdrew funds without authorization from a bank account that BMS held at Eastern Bank. Pending before the Court is defendants' motion for judgment on the pleadings with respect to all claims asserted against them. For the reasons explained below, that motion will be granted in part and denied in part. Rojas and BMS fail to allege facts sufficient to sustain their claims for negligence, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, breach of contract, and a violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq*. Those claims will therefore be dismissed. Rojas and BMS do, however, allege facts sufficient to state claims for conversion, declaratory judgment, and a violation of M.G.L. c. 93A, § 11, and the defendants' motion will be denied as to those claims.

## BACKGROUND

The pertinent facts, as alleged in the amended complaint, are as follows. Boston Mortgage Services, LLC is a mortgage broker and processor for residential mortgages. ECF 24, ¶ 5. Rojas is the sole member and manager of BMS. *Id.* ¶ 6. At all relevant times, BMS held an account at Eastern Bank that it used for payroll and operations. *See id.* ¶¶ 7, 9, 10. Rojas occasionally used that account to pay her own personal expenses, including her Capital One credit card payment, which was routinely taken directly from the account. *Id.* ¶ 7. Rojas considered such payments to be draws on her profits of the LLC that she believed she was entitled to as BMS's sole member. *Id.*

Between October 2021 and July 3, 2022, several unauthorized transactions were completed involving BMS's account at Eastern Bank. *Id.* ¶ 10. Specifically, Capital One allegedly made $256,246.30 in "withdrawals" from the account. *Id.* ¶¶ 11, 18, 22. Such withdrawals were not authorized by BMS or Rojas, but because Rojas routinely paid her Capital One credit card bill from the account, she did not notice the unauthorized transactions for several months. *Id.* ¶¶ 10, 14, 22. Upon discovering the unauthorized transactions, Rojas contacted Capital One to inquire about the transactions, but Capital One was "cagey" in its responses. *Id.* ¶ 20. At one point, Capital One threatened to initiate fraud charges against Rojas. *Id.* ¶ 23. At another point, Capital One told Rojas that it would reimburse the plaintiffs for the withdrawn funds. *Id.* Ultimately, the plaintiffs concluded that the withdrawn funds were used to pay unknown Capital One customer accounts— accounts that did not belong to BMS, Rojas, or any third party authorized to receive payments. *Id.* ¶¶ 11-12, 17-18, 20. Capital One never explained to BMS or Rojas why the funds were withdrawn or identified the Capital One customer accounts that it credited. *Id.* ¶ 20.

BMS and Rojas disputed the unauthorized transactions with Eastern Bank, but were able to recover from Eastern Bank only $125,000, the maximum fraud protection available. *Id.* ¶ 21. Accordingly, BMS and Rojas have lost approximately $131,246.30 as a result of the unauthorized transactions. *Id.* ¶ 22.

Rojas, appearing *pro se*, initiated this action in Suffolk County Superior Court in March 2023. ECF 1, ¶ 1. Defendant Capital One, N.A. then removed the action to this Court. *Id.* Rojas thereafter filed, with the assistance of counsel, an amended complaint in July 2023, which added BMS as a plaintiff and named Capital One Financial Corporation and Capital One Bank, N.A. (collectively "Capital One") as defendants. ECF 24, at 1. In the amended complaint, Rojas and BMS assert claims for declaratory judgment (Count I); negligence (Count II); breach of fiduciary duty (Count III); breach of the covenant of good faith and fair dealing (Count IV); breach of contract (Count V); conversion (Count VI); a violation of M.G.L. c. 93A, § 11 (Count VII); and a violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.* (Count VIII). *Id.* ¶¶ 27-77. Capital One filed a motion for judgment on the pleadings, seeking judgment in its favor as to all of the claims and dismissal of the amended complaint in its entirety.

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) "is treated much like a Rule 12(b)(6) motion to dismiss." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (citing *Curran v. Cousins*, 509 F.3d 36, 43-44 (1st Cir. 2007)). Accordingly, "'the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom.'" *Id.* (quoting *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006)). Precisely because a Rule 12(c)

motion seeks "an extremely early assessment of the merits of the case, the trial court must accept all of the nonmovant's well-pleaded factual averments as true." *Rivera-Gomez v. de Castro*, 843 F.2d 631, 631 (1st Cir. 1988). "[T]o survive a 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" *Pérez-Acevedo*, 520 F.3d at 29 (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

## DISCUSSION

### I. <u>Rojas's Standing.</u>

Capital One first challenges Rojas's standing to assert her claims. In Capital One's view, because the Eastern Bank account from which the defendants allegedly withdrew the relevant funds belongs to BMS, not to Rojas, Rojas has not alleged that she suffered any personal injury in fact to sustain her claims.

"'Article III of the Constitution confines the federal courts to deciding actual cases and controversies.'" *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005) (quoting *Cotter v. City of Boston*, 323 F.3d 160, 166 (1st Cir. 2003)). "An actual case or controversy exists when the party seeking to invoke the court's jurisdiction . . . has a 'personal stake in the outcome' of the claim asserted." *Pagán v. Calderón*, 448 F.3d 16, 27 (1st Cir. 2006) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "To satisfy the personal stake requirement, the plaintiff must . . . adequately allege that [she] 'suffered or is threatened by [an] injury in fact to a cognizable interest.'" *Id.* (quoting *Save our Heritage, Inc. v. FAA*, 269 F.3d 49, 55 (1st Cir. 2001)). An injury in fact "'must be both 'concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) (quoting *Van Wagner Bos., LLC v. Davey*, 770 F.3d 33, 37 (1st Cir. 2014)). The plaintiff must also adequately allege

4

traceability—*i.e.*, that "the asserted injury is causally connected to the challenged conduct"—and that a favorable outcome of the litigation is likely to redress the injury. *Pagán*, 448 F.3d at 27.

Shareholders of a corporation do not have Article III standing to enforce the rights of the corporation or redress the corporation's injuries in their individual capacities, even when the corporation has only one shareholder. *Diva's Inc.*, 411 F.3d at 42. Likewise, "a member of an LLC cannot bring an action in his own name to enforce the rights or redress the injuries of the LLC." *Laverty v. Massad*, 661 F. Supp. 2d 55, 62 (D. Mass. 2009) (citing *First Taunton Fin. Corp. v. Arlington Land Acquisition-99, LLC*, 20 Mass. L. Rep. 556 (Feb. 27, 2006)); *see also Dickey v. Inspectional Servs. Dept. of Boston*, 482 Mass. 1003, 1004 (2019) (adopting this principle from *Laverty*). "Massachusetts limited liability companies, like Massachusetts business corporations, are legal entities with the rights to sue and be sued separate and apart from their shareholders and members." *Dickey*, 482 Mass. at 1004. Accordingly, the ownership interest of a member of an LLC "does not give [the member] standing to raise the claims of the [LLC] . . . in his individual capacity," because "[t]o hold otherwise would be to vitiate the principl[e] that corporations and limited liability companies are entities that exist separate and distinct from the individuals who own them." *Id.*

Thus, where a member of an LLC alleges that she "has suffered an injury in a *personal* capacity," she "has standing to sue." *Laverty*, 661 F. Supp. 2d at 61 (emphasis added). But where the member is "seeking to assert claims on behalf of [the LLC], or otherwise for injuries to others . . . [she] does not have standing to assert those claims." *Id.* at 62 (offering, as an example, that a member would not have standing to assert claims for breach of contract where the member was not a party to the agreement). Where it is "not clear whether [the plaintiff] asserts claims on behalf of [her] corporate entities, or by [herself] individually," and where "these allegations may

5

overlap," the Court may "consider the claims only to the extent that the injuries affected [the plaintiff] individually." *Quaglieri v. Steeves*, No. 11-cv-10377-DJC, 2013 WL 1222220, at *3 (D. Mass. Mar. 26, 2023) (citing *Laverty*, 661 F. Supp. 2d at 61).

Applying these principles here, Rojas lacks standing to assert claims on behalf of BMS in her individual capacity. But because Rojas alleges that she routinely treated the BMS account as her personal bank account and was entitled to draw on that account for her own distributions, it is unclear from the face of the amended complaint whether Rojas's alleged losses are personal losses or strictly losses of BMS. Accordingly, Rojas's has standing to pursue her claims only insofar as she alleges that she has been injured individually. *See id.*

## II. Negligence.

The Court turns next to the plaintiffs' negligence claim. Capital One[1] contends that the claim is barred as a matter of law by the economic loss doctrine. Under Massachusetts law, "'purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.'" *In re TJX Cos. Retail Sec. Breach Litigation*, 564 F.3d 489, 498 (1st Cir. 2009) (quoting *Aldrich v. ADD Inc.*, 437 Mass. 213, 222 (2002)). This "doctrine cabins what could otherwise be open-ended negligence liability to anyone affected by a negligent act." *Id.* Capital One contends that Rojas and BMS's sole alleged losses—namely, the funds

---

[1] The amended complaint attributes all factual allegations contained therein to "Capital One" but does not specify which allegations should be attributed to Capital One Bank, N.A. versus Capital One Financial Corporation. The defendants argue that Capital One Financial Corporation is an improper party as to all claims, because Rojas and BMS fail to identify any relationship with that entity or tie any of its actions to the wrongdoing in the amended complaint. Rojas and BMS respond that although the amended complaint refers to "Capital One" in general terms, such allegations are collectively set forth against both Capital One Financial Corporation and Capital One Bank, N.A. In light of the Court's obligation to draw all inferences in favor of Rojas and BMS, the Court construes the allegations against "Capital One" as allegations against both defendants, and will consider whether the amended complaint alleges facts sufficient to state claims against both entities on a claim-by-claim basis. *See Pérez-Acevedo*, 520 F.3d at 29.

withdrawn from BMS's bank account—are purely economic, such that Rojas and BMS cannot recover on a negligence theory.

Rojas and BMS do not dispute that their damages are purely economic but, relying on *Portier v. NEO Technology Solutions*, argue that their claim nonetheless survives. *See* No. 17-cv-30111-TSH, 2019 WL 7946103, at *1 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, 2020 WL 877035 (D. Mass. Jan. 30, 2020). *Portier* involved a negligence claim arising out of an employer data breach that resulted in the disclosure of employees' sensitive personal information, including Social Security numbers, names, addresses, and compensation. *Id.* In assessing whether the economic loss doctrine barred the plaintiffs' claim, the Court determined that, under Massachusetts law,[2] employers likely have an independent common law duty to their employees to safeguard sensitive personal and financial information—a breach of which could support a negligence claim, even where the plaintiff suffers purely pecuniary damages. *Id.* at *20-21. The employer's independent common law duty, *Portier* reasoned, derives from a "special relationship" between the employer and the employee with respect to the protection of sensitive personal information. *Id.* at *21-22.

Rojas and BMS argue that this case is similar to *Portier* because, in their view, Capital One had a duty to safeguard their financial information and breached that duty through the alleged unauthorized withdrawals. The plaintiffs' reliance on *Portier* is misplaced. Although the amended complaint asserts that Capital One breached a duty to "safeguar[d] personal and private information . . . by accepting withdrawals from Plaintiffs' accounts seemingly for other

---

[2] The Supreme Judicial Court has not applied the economic loss doctrine to a negligence claim arising out of an employer data breach. *Portier* predicted how that Court would rule, based on a Pennsylvania Supreme Court decision applying Pennsylvania's economic loss doctrine, which, *Portier* determined, was analogous to that of Massachusetts. 2019 WL 7946103, at *18-19.

7

customers," ECF 24, ¶¶ 36-38, they do not allege, as in *Portier*, that their personal and private information was disclosed to unauthorized third parties through a data breach. *See* 2019 WL 7946103, at *18-20; *see also Dittman v. UPMC*, 649 Pa. 496, 499-501 (2018). Rojas and BMS have not identified—and the Court is not aware of—any Massachusetts authority indicating that a credit card provider has a "special relationship" with its customers that would support an independent common law duty to safeguard data. *See Eggiman v. Bank of Am., N.A.*, No. 22-cv-10298-ADB, 2023 WL 2647071, at *4 (D. Mass. March 27, 2023) (declining to apply the *Portier* exception to the economic loss doctrine where no case law supported the notion that a special relationship exists between a bank and its customers); *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 106-07 (D. Mass. 2021) (same as to the relationship between two businesses). Accordingly, the Court declines to apply the potential exception to the economic loss doctrine articulated in *Portier* and concludes that Rojas and BMS's negligence claim is, as a matter of law, foreclosed by the doctrine.

### III. Breach of Fiduciary Duty.

Capital One argues that Rojas and BMS's breach of fiduciary duty claim must fail because it did not owe them a fiduciary duty. "To establish a claim of fiduciary duty under Massachusetts law, 'there must be a [fiduciary] duty owed to the plaintiff by the defendant and the injury to the plaintiff caused by the [defendant's] breach thereof." *UBS Fin. Servs. Inc. v. Aliberti*, 483 Mass. 396, 405-06 (2019) (quoting *Est. of Moulton v. Puopolo*, 467 Mass. 478, 492 (2014)). "Fiduciary duties may arise in two ways: (a) as a matter of law, where parties to the subject relationship are cast in archetypal roles, such as trustee and beneficiary, guardian and ward, attorney and client; or (b) as determined by the facts established upon evidence indicating that one person is in fact dependent on another's judgment in business affairs or property matters." *Id.* (citations and

quotation marks omitted). "The relationship of debtor and creditor, without more, does not establish a fiduciary relationship." *Blais v. Warren Five Cents Sav. Bank*, No. 9128, 1993 WL 488429, at *2 (Mass. App. Div. Nov. 22, 1993). For a fiduciary duty to arise by the facts alleged (and not as a matter of law), "'faith, confidence, and trust' [must be] reposed by one party 'in another's judgment and advice.'" *UBS Fin. Servs. Inc.*, 483 Mass. at 408 (quoting *Doe v. Harbor Sch., Inc.*, 446 Mass. 245, 252 (2006)).

The relationship between Capital One and Rojas and BMS, as alleged, was that of banking institution or a credit card company and its customer. ECF 24, ¶¶ 42-43, 45. Rojas and BMS do not argue, and the Court is not aware of authority indicating, that a fiduciary duty exists a matter of law in such a relationship. *See UBS Fin. Servs. Inc.*, 483 Mass. at 405-06. The Court therefore considers whether the particular facts alleged in this case suggest that Capital One owed the plaintiffs a fiduciary duty that required Capital One to exercise reasonable care when withdrawing funds from BMS's account at Eastern Bank and to inform Rojas and BMS of questionable activity. Citing no authority in support, Rojas and BMS argue that the credit card agreement between the parties, pursuant to which Rojas and BMS entrusted Capital One with their financial data, created a fiduciary duty on the part of Capital One to safeguard that data. The Court disagrees. As an initial matter, the amended complaint does not attach a copy of the agreement or identify the provision of the agreement that, in the plaintiffs' view, gives rise to a fiduciary duty. And although Rojas and BMS may have trusted Capital One with their financial data, the amended complaint contains no facts to suggest that Rojas or BMS was "dependent on [Capital One's] judgment in business affairs or property matters," or that "faith, confidence and trust" were reposed in Capital One's "judgment and advice." *Id.* at 405-06, 408. Thus, the allegations do not plausibly establish that

Capital One owed the plaintiffs a fiduciary duty, and Capital One is entitled to judgment on the pleadings on the breach of fiduciary duty claim.

## IV. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing.

Capital One next argues that the plaintiffs' breach of contract claim fails because the amended complaint does not identify a single provision in the credit card agreement, or any other agreement between the parties, that Capital One allegedly violated. And, Capital One contends, without a viable breach of contract claim, the plaintiffs' claim for breach of the covenant of good faith and fair dealing must also fail because the covenant is a creature of the rights and obligations provided by contract.

Under Massachusetts law, "[t]he elements of a breach of contract claim are 'that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing and able to perform his or her part of the contract; and the defendant committed a breach of the contract; and the plaintiff suffered harm as a result.'" *Huang v. RE/MAX Leading Edge*, 101 Mass. App. Ct. 150, 153-54 (2022) (quoting *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016)). "The covenant of good faith and fair dealing is implied in every contract, . . . including contracts between sophisticated business people." *Robert & Ardis James Found. v. Meyers*, 474 Mass. 181, 189 (2016) (citations and quotation marks omitted). The covenant "provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-72 (1991)). "'[T]he scope of the covenant is only as broad as the contract that governs the particular relationship.'" *Id.* (quoting *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005)). The covenant "may not be 'invoked to create rights and

duties not otherwise provided for in the existing contractual relationship.'" *Ayash*, 443 Mass. at 385 (quoting *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004)).

Rojas and BMS allege that their credit card agreement with Capital One was a binding and valid contract that Capital One breached by withdrawing funds from BMS's account at Eastern Bank without their authorization. ECF 24, ¶¶ 56-57. They further allege that these withdrawals, and Capital One's bad faith refusal to return the funds, violated the covenant of good faith and fair dealing. *Id.* ¶¶ 49-54. Yet the amended complaint does not identify the terms of the credit card agreement that Capital One purportedly violated by withdrawing the funds, nor, as discussed, does it attach the parties' contract as an exhibit. Without concrete allegations regarding the substance of the parties' agreement or what terms of the agreement Capital One breached, the plaintiffs' breach of contract claim cannot survive. *See Britton v. AthenaHealth, Inc.*, No. 13-P-1544, 2015 WL 4726872, at *2 (Mass. App. Ct. Aug. 11, 2015) (Rule 1:28) (concluding that plaintiffs failed to state claim for breach of contract, in part, because they did not allege facts demonstrating "any contract right was breached"). And since a claim for breach of the implied covenant of good faith and fair dealing is limited to the rights set forth in a contract, the breach of the implied covenant of good faith and fair dealing claim fails too. *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005).

V.     **Conversion.**

Capital One contends that Rojas and BMS's conversion claim fails because the amended complaint does not allege facts to plausibly establish that it exercised unauthorized dominion over the withdrawn funds. Emphasizing the allegation that "all of the unauthorized transactions went to pay accounts of customers of Capital One," ECF 24, ¶ 12, Capital One maintains that while the

11

amended complaint alleges that the *recipient customers* exercised dominion and control over the funds, it does not allege that *Capital One* exercised dominion and control.

Under Massachusetts law, "[t]he tort of conversion requires an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession." *Kelley v. LaForce*, 288 F.3d 1, 11-12 (1st Cir. 2002) (citing *Third Nat'l Bank v. Cont'l Ins. Co.*, 388 Mass. 380, 383 (Mass. 1983); Restatement (Second) of Torts § 222A (1965)); *see In re Hilson*, 448 Mass. 603, 611 (2007) ("The elements of conversion may be established by a showing that one person exercised dominion over the personal property of another, without right, and thereby deprived the rightful owner of its use and enjoyment."). A claim of "[c]onversion may lie if an individual wrongly exercises dominion or control over the money of another." *Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 87 (2014). And those authorized to access another's money for a limited and defined purpose may exercise wrongful dominion or control over that money if they exceed the scope of their limited authorization. *See Cahaly v. Benistar Prop. Exch. Tr. Co.*, 68 Mass. App. Ct. 668, 679-80 (2007) (a defendant bank that was authorized to keep plaintiffs' funds in an escrow account exercised wrongful dominion or control over the funds when it exceeded its limited authority by using the funds for other unauthorized purposes).

The allegations in the amended complaint, construed in the light most favorable to Rojas and BMS, plausibly establish that Capital One exercised wrongful dominion or control over their funds. The amended complaint alleges that Capital One was authorized to access the BMS account at Eastern Bank to withdraw payments for Rojas's and BMS's Capital One credit card accounts. ECF 24, ¶ 61. But, as alleged, Capital One exceeded the scope of its authority when it withdrew funds from BMS's account to credit the accounts of unidentified third party customers of Capital One. *See id.* ¶¶ 15, 17-20, 61. In one paragraph, the amended complaint alleges that the funds

ultimately were under the dominion or control of the recipient customers, *see id.* ¶ 12, but in other paragraphs, it alleges that the funds were under Capital One's control, not the control of Capital One's customers, *see id.* ¶¶ 11, 19, 62. In addition, the amended complaint alleges that Capital One was the principal actor that withdrew the funds without authorization and did not return the funds to Rojas or BMS. *See id.* ¶¶ 62-64. At this stage in the proceedings, these allegations are sufficient to plead wrongful dominion or control, and the conversion claim therefore survives. *See Cahaly*, 68 Mass. App. Ct at 679-80.

### VI.  Chapter 93A.

Capital One seeks judgment on the pleadings on the plaintiffs' claim under M.G.L. c. 93A, § 11 on several bases. First, Capital One argues that Chapter 93A requires plaintiffs to send a demand letter to defendants thirty days prior to filing an action, and Rojas and BMS failed to take that necessary step before bringing this lawsuit. This argument misstates the plaintiffs' obligation under M.G.L. c. 93A, § 11. Chapter 93A creates two mutually exclusive private rights of action: section 9 authorizes consumers to bring an action for unfair or deceptive acts or practices, and section 11 creates the same right for "[a]ny person who engages in the conduct of any trade or commerce." M.G.L. c. 93A, §§ 9, 11; *see Cont'l Ins. Co. v. Bahnan*, 216 F.3d 150, 156 (1st Cir. 2000) ("[S]ection 11 affords no relief to consumers and, conversely, section 9 affords no relief to persons engaged in trade or commerce."). Although section 9 requires consumer plaintiffs to issue written demands to defendants at least thirty days before filing a claim, *see* M.G.L. c. 93A, § 9(3), section 11 has no written demand requirement, *id.* § 11; *see Damon v. Sun Co., Inc.*, 87 F.3d 1467, 1486 (1st Cir. 1996). Since Rojas and BMS brought their Chapter 93A claim under section 11— and Capital One does not dispute that they properly rely on section 11—the plaintiffs were not required to send Capital One a demand letter before filing this case.

In the alternative, Capital One argues, Rojas and BMS fail to allege sufficient facts to state a plausible claim under Chapter 93A. Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2(a). To state a claim under section 11, a plaintiff must allege facts sufficient to establish "(1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by M.G.L. c. 93A, § 2, or the regulations promulgated thereunder; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014).

Focusing on only the first element, Capital One contends the amended complaint does not allege facts showing that its conduct was unfair or deceptive. Although Chapter 93A does not define what constitutes an unfair or deceptive act or practice, Massachusetts courts have held that "an act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (quoting *PMP Assocs. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)); *see Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312, 316 (2018). An act or practice is deceptive "'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" *Walsh*, 821 F.3d at 160 (quoting *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 394 (2004)). "To be held unfair or deceptive under [Chapter] 93A, practices involving even worldly-wise business people do not have to attain the antiheroic proportions of immoral, unethical, oppressive, or unscrupulous conduct,

14

but need only be within any recognized or established common law or statutory concept of unfairness." *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 620 (1994).

With all inferences drawn in favor of Rojas and BMS, the amended complaint plausibly alleges that Capital One committed an unfair or deceptive act. *See Auto Flat Car Crushers, Inc.*, 469 Mass. at 820. It alleges that Capital One withdrew $256,246.30 from the BMS account at Eastern Bank without authorization from Rojas or BMS, ECF 24, ¶ 18; that such withdrawals were "fraudulent" and not credited toward Rojas's or BMS's Capital One credit card accounts, *id.* ¶ 17; that Capital One did not inform the plaintiffs why the withdrawals were made or identify the customer accounts that were credited with the withdrawn funds, *id.* ¶ 20; and that Capital One "threatened [Rojas] with having fraud charges instituted against her," and insinuated that "a former employee or somebody close to [Rojas]" was the one "who committed the fraud," *id.* ¶ 23. Capital One makes no persuasive argument as to why such allegations, accepted as true, do not state a claim that Capital One's conduct fell "'within at least the penumbra of some common-law, statutory, or other established concept of unfairness,'" or was "'immoral, unethical, oppressive, or unscrupulous.'" *Walsh*, 821 F.3d at 160 (quoting *PMP Assocs.*, 366 Mass. at 596).

Alternatively, Capital One contends that Rojas and BMS have alleged a mere "private dispute" to which Chapter 93A does not apply. ECF 49, at 13. The Massachusetts Legislature enacted Chapter 93A to "reduce the general danger to the public arising from the potential for . . . unscrupulous behavior in the marketplace" through "the imposition of penalties for specific unfair or deceptive acts or practices between particular individuals." *Manning v. Zuckerman*, 388 Mass. 8, 14 (1983); *see Allstate Ins. Co. v. Fougere*, 79 F.4th 172, 186 (1st Cir. 2023). Consistent with that intent, Chapter 93A applies to disputes that occur "in the ordinary conduct of any trade or commerce," but does not reach disputes that are "private in nature." *Manning*, 388 Mass. at 14

but need only be within any recognized or established common law or statutory concept of unfairness." *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 620 (1994).

With all inferences drawn in favor of Rojas and BMS, the amended complaint plausibly alleges that Capital One committed an unfair or deceptive act. *See Auto Flat Car Crushers, Inc.*, 469 Mass. at 820. It alleges that Capital One withdrew $256,246.30 from the BMS account at Eastern Bank without authorization from Rojas or BMS, ECF 24, ¶ 18; that such withdrawals were "fraudulent" and not credited toward Rojas's or BMS's Capital One credit card accounts, *id.* ¶ 17; that Capital One did not inform the plaintiffs why the withdrawals were made or identify the customer accounts that were credited with the withdrawn funds, *id.* ¶ 20; and that Capital One "threatened [Rojas] with having fraud charges instituted against her," and insinuated that "a former employee or somebody close to [Rojas]" was the one "who committed the fraud," *id.* ¶ 23. Capital One makes no persuasive argument as to why such allegations, accepted as true, do not state a claim that Capital One's conduct fell "'within at least the penumbra of some common-law, statutory, or other established concept of unfairness,'" or was "'immoral, unethical, oppressive, or unscrupulous.'" *Walsh*, 821 F.3d at 160 (quoting *PMP Assocs.*, 366 Mass. at 596).

Alternatively, Capital One contends that Rojas and BMS have alleged a mere "private dispute" to which Chapter 93A does not apply. ECF 49, at 13. The Massachusetts Legislature enacted Chapter 93A to "reduce the general danger to the public arising from the potential for . . . unscrupulous behavior in the marketplace" through "the imposition of penalties for specific unfair or deceptive acts or practices between particular individuals." *Manning v. Zuckerman*, 388 Mass. 8, 14 (1983); *see Allstate Ins. Co. v. Fougere*, 79 F.4th 172, 186 (1st Cir. 2023). Consistent with that intent, Chapter 93A applies to disputes that occur "in the ordinary conduct of any trade or commerce," but does not reach disputes that are "private in nature." *Manning*, 388 Mass. at 14

(quotation marks omitted); *see* M.G.L. c. 93A, § 2(a) ("[U]nfair or deceptive acts or practices *in the conduct of any trade or commerce* are hereby declared unlawful." (emphasis added)). The dispute alleged here, however, does not arise from a "strictly private transactio[n]," such as between business partners or between an employer and employee, that may be excluded from Chapter 93A's coverage. *Allstate Ins. Co.*, 79 F.4th at 186. Rather, it arises from alleged transactions between a credit card company and its customers in the ordinary course of trade or commerce. Chapter 93A therefore applies to the transactions alleged in the amended complaint, and Capital One is not entitled to judgment on the plaintiffs' claim.

## VII. Electronic Fund Transfer Act.

Capital One next argues that the plaintiffs' claim under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, fails because the relevant account at Eastern Bank from which the funds were allegedly withdrawn did not belong to a "consumer," as required by the statute and its corresponding regulations. Because BMS—the owner of the account—is an LLC and not a natural person, Capital One contends, Rojas and BMS cannot bring a claim under the EFTA.

Congress enacted the EFTA "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems," with the "primary objective" of protecting "individual consumer rights." 15 U.S.C. § 1693(b). The statute creates a private right of action against a bank that "fails to comply" with its substantive provisions, "with respect to any *consumer*." *Id.* § 1693m(a), (g) (emphasis added); *see Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 584 (9th Cir. 2021).[3] As defined in the statute, "the

---

[3] "Regulation E implements the [EFTA]," *Bettencourt v. Jeanne D'Arc Credit Union*, 370 F. Supp. 3d 258, 265 (D. Mass. 2019), and provides that the EFTA "applies to any electronic fund transfer that authorizes a financial institution to debit or credit a *consumer's account*," 12 C.F.R. § 205.3(a) (emphasis added).

term 'consumer' means a natural person." 15 U.S.C. § 1693a(6). Consequently, "[c]orporations or other business entities are not 'consumers' for purposes of the EFTA." *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010) (citing *Kashanchi v. Texas Com. Med. Bank, N.A.*, 703 F.2d 936, 939-42 (5th Cir. 1983)); *see also Corposistemas, C.A. v. Regions Bank*, 1:23-cv-23540-KMM, 2024 WL 2783124, at *2-*3 (S.D. Fla. Feb. 5, 2024) (corporate plaintiff was not a consumer under the EFTA and was accordingly foreclosed from bringing an EFTA claim). The statute further defines the term "account" as "a demand deposit, savings deposit, or other asset account . . . *established primarily for personal, family, or household purposes*." 15 U.S.C. § 1693a(2) (emphasis added). Accordingly, "'the EFTA does not apply to accounts that are used primarily or solely for commercial purposes.'" *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 338 (S.D.N.Y. 2023) (citation omitted).

The amended complaint alleges that BMS held the account at Eastern Bank from which Capital One withdrew the relevant funds and that BMS used the account for payroll and operations. ECF 24, ¶¶ 7, 9-10. Because BMS is an LLC, it is not a "consumer" for purposes of the EFTA and is therefore foreclosed from bringing a claim under the statute. *See* 15 U.S.C. § 1693a(6); 12 C.F.R. § 205.3(a); *Ironforge.com*, 747 F. Supp. 2d at 402. Furthermore, although Rojas—a natural person and therefore, "consumer"—routinely used the BMS account to pay personal expenses, ECF 24, ¶ 7, the amended complaint contains no allegations indicating that Rojas herself owned the account or that the account was "established primarily for personal, family, or household purposes," 15 U.S.C. § 1693a(2). Thus, the EFTA and the regulations thereunder do not apply to BMS's Eastern Bank account, and both plaintiffs are foreclosed from bringing a claim under the EFTA. *See id.*; *Yuille*, 686 F. Supp. 3d at 338.

## VIII. <u>Declaratory Judgment.</u>

Finally, the Court turns to the plaintiffs' declaratory judgment claim. ECF 24, ¶¶ 31-32. Capital One argues that the request for declaratory relief fails because Eastern Bank—the bank where BMS held its relevant account—is a necessary party that is not named as a defendant. If Eastern Bank is indeed a necessary party, however, the proper remedy would be joinder, not dismissal, so long as joinder of Eastern Bank is feasible. *See* Fed. R. Civ. P. 19; *Duggan v. Martorello*, 596 F. Supp. 3d 195, 203 (D. Mass. 2022). Capital One makes no argument that joinder of Eastern Bank is not feasible, but the Court nevertheless considers whether joinder of Eastern Bank is necessary to sustain the claim for declaratory relief.

"Generally, all interested parties should be joined in a declaratory judgment action whenever possible in keeping with the purpose of the Declaratory Judgment Act to fully and finally adjudicate the controversy at issue." *AIG Prop. Cas. Co. v. Green*, 172 F. Supp. 3d 468, 476 (D. Mass. 2016) (citations and quotation marks omitted). Federal Rule of Civil Procedure 19, which governs joinder of necessary parties, provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot afford complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

Rule 19(a)(1) does not require the joinder of Eastern Bank. The plaintiffs' two surviving substantive claims are for conversion and a violation of M.G.L. c. 93A, § 11. Capital One makes

18

no argument as why Eastern Bank is a necessary party if, as alleged, Capital One intentionally or wrongfully exercised dominion or control over the plaintiffs' funds. Likewise, Capital One makes no argument as why Eastern Bank is a necessary party if, as alleged, Capital One's unfair or deceptive conduct resulted in the wrongful withdrawal of funds from BMS's account at Eastern Bank. Thus, Capital One offers no convincing reason why the Court could not "afford complete relief" among Rojas, BMS, and Capital One in Eastern Bank's absence. Fed. R. Civ. P. 19(a)(1)(A). Nor does the Court discern an interest of Eastern Bank's in these two claims that would be "impair[ed] or imped[ed]" were the Court to "dispos[e] of the action in [its] absence," or that would "leave [Rojas, BMS, or Capital One] subject to substantial risk of incurring, double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B). Thus, Capital One is not entitled to judgment on the pleadings on the plaintiffs' declaratory judgment claim and, at least at this juncture, Eastern Bank is not a necessary party.

## CONCLUSION

For the foregoing reasons, the defendants' motion for judgment on the pleadings is GRANTED with respect to Counts II, III, IV, V, and VIII, and DENIED with respect to Counts I, VI, and VII. Counts II, III, IV, V, and VIII are hereby dismissed.

SO ORDERED.

Dated: September 4, 2024

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE